IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATASHA NICOLE HODGE,

        Plaintiff,

v.

                                                                                                 No. 1:16-cv-00974-KRS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## OPINION AND ORDER GRANTING MOTION TO REVERSE OR REMAND AND REMANDING TO AGENCY FOR FURTHER PROCEEDINGS

Plaintiff Natasha Nicole Hodge seeks review of the Social Security Administration's denial of her application for supplemental security income. *See* 42 U.S.C. § 1382(c). Because the Court agrees that the Administrative Law Judge ("ALJ") erred in determining that Hodge could perform some sedentary work, and, as a result, was not disabled, the Court **GRANTS** Hodge's motion and **REMANDS** this case to the agency for further proceedings commensurate with this decision.

### I. BACKGROUND

Hodge alleged disability as of April 2, 2008, at age twenty seven, arising from bipolar disorder, type 2 diabetes, and low back pain. [AR 253; 218]. Following a hearing, Administrative Law Judge Eric Weiss denied Baker's application for benefits. [AR 12-31; 32-76]. At step three of the five-part framework[1] used to evaluate disability, the ALJ concluded that

---

[1]The five-part sequential analysis is used to determine disability where, as here, a plaintiff's application has been denied both initially and on reconsideration. *See* 20 C.F.R. § 404.1520(a)(4)(i–v). The framework asks whether the plaintiff (1) has engaged in "substantial gainful activity" (Step 1); (2) has a "severe medically determinable"

Hodge's lower back, right foot, and ankle problems, as well as major depressive and bipolar disorders, impairments the ALJ determined were severe, did not meet or equal a listed impairment the agency has determined to be presumptively disabling. [AR 18-19]. At steps four and five, the ALJ determined that Hodge did not have any past relevant work experience, but retained the residual functional capacity ("RFC") to perform sedentary jobs so long as she only has "occasional interaction with coworkers and supervisors."[2] [AR 19-25]. Relying on the testimony of a vocation expert, the ALJ concluded that sufficient jobs existed in the national economy that matched Hodge's age, education, work experience, and limitations, such as an addresser and document specialist. [AR 25]. After the Appeals Council denied review of the ALJ's decision, Hodge filed the instant complaint in this Court and moved to reverse or remand the agency adverse determination. [AR 1-4; Docs. 1, 16].

## II. STANDARD OF REVIEW

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and the ALJ applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the law, the plaintiff is not entitled to relief. *See Langley v.*

---

"impairment" "or a combination of impairments" that either has lasted or is expected to last at least one year (Step 2); (3) has alleged impairments that meet or equal one of the presumptively disability impairments the agency has listed (Step 3); (4) is unable to perform her "past relevant work"; (5) the retains the residual functional capacity to perform work in the national economy in light of her age, education, and work experience 20 C.F.R. § 404.1520(a)(4)(i–v). The parties do not challenge the ALJ's determination that Hodge has not engaged in substantial gainful activity since her onset date, that she suffers from severe impairments at steps one and two respectively [AR 19-20]. For the sake of brevity, the Court does not further recount them.

[2] The ALJ found various other physical limitations: (1) occasionally lifting, carrying, pushing, or pulling 10 pounds; (2) standing and walking up to two hours, and siting no more than six hours in an 8 hour workday; (3) occasionally stooping, crouching, kneeling, balancing, climbing ramps and stairs (excluding ladders, ropes, scaffolds); (4) occasionally using right foot "in foot control operations and to push"; avoiding extreme cold, excessive vibration, unprotected hazards, and unprotected heights. [AR 19-20]. Because the Court's disposition turns on the mental impairments and ultimately does not reach the merits of the Hodge's challenge to physical component to the residual functional capacity, the Court does not further discuss the limitations.

*Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118 (citation and internal quotation marks omitted). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### III. ANALYSIS

Hodge challenges the ALJ's decision on two grounds: (1) the determination that Hodge retained the residual functional capacity ("RFC") to perform sedentary work; and (2) the ALJ's reliance on the testimony of the vocational expert in concluding there were jobs available that Hodge could perform. Hodge's first assertion encompasses both the ALJ's rejection of alleged physical and mental limitations as well as her legal objection to reasons the ALJ gave for not incorporating into the RFC limitations from a psychologist consultant and the factual support for the RFC determination. Because the Court determines that the ALJ improperly rejected the agency consultant's assessment of her mental impairments, and the record support the ALJ cited as the bases is indicative of the overall lack substantial evidence supporting the RFC determination, the Court does not specifically reach the physical limitations issue. The ALJ's error in determining the RFC at step four requires remand and necessarily invalidates the ALJ's step-five finding; therefore, the Court does not address Hodge's contention regarding reliance on the vocational expert.

### A.  RFC Determination

The centerpiece of Hodge's challenge is the ALJ's treatment of clinical psychologist Sheri Spies' mental limitations in fashioning the RFC. The Social Security Administration hired

Dr. Spies to examine and evaluate Hodge because, in its view, existing mental health records were insufficient to permit a determination. *See* SSR 96-6p, 1996 WL 374180 (explaining that such "consultants are highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Act"). In that capacity, Dr. Spies opined that Hodge's "ability to maintain employment was markedly limited due to [her] symptoms of depression." [3] [AR 21]. A "marked limitation," in agency speak, is synonymous with a severe limitation in an area of functioning. Dr. Spies assigned Hodge a GAF of 45,[4] "indicating serious symptoms." [AR 21]. The ALJ concluded "Dr. Spies' opinions regarding the claimant's psychological abilities are not well supported in the record" and that "these opinions appear to be founded by the claimant's self-reported symptoms." [AR 22].

As with all medical opinions, the ALJ must consider the limitations an agency consultant places on a plaintiff's mental abilities, discuss the weight he assigns to the consultant's assessment, and give good reasons for that weight he chooses. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted). In fulfilling this obligation, the ALJ examines "the supportability of the opinion in the evidence"; "the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the . . . psychological consultant[.]" SSR 96-6p, 1996 WL 374180. The ALJ's duty in this regard encompasses two concomitant standards: (1) the *legal* hurdle the ALJ must clear

---

[3] The ALJ also noted Dr. Spies findings that Hodge "had marked limitations in getting along with supervisors, co-workers, and/or the general public; marked limitation in understanding and following complex or detailed instructions; moderate limitations in following simple instructions; and moderate limitations in responding appropriately workplace hazards. [AR 21-22].

[4] "GAF" refers to Global Assessment of Function, which is a numeric scale from 1 at the low end to 100 at the high end that mental-healthcare practitioners use to subjectively rate the social, occupational, and psychological functioning of an individual. The scale is included in the DSM IV, or American Psychiatric Association's fourth edition of the *Diagnostic & Statistical Manual of Mental Disorders*.

by assigning *a* weight to a medical opinion as well as articulating a legitimate reason for doing so; and (2) the ALJ's separate *factual* obligation to of tie the reasons to record evidence.

### 1. *Legal attacks to the RFC*

The ALJ did not specify what weight he gave the limitations Dr. Spies placed on Hodge's ability to work in formulating the RFC. Instead, the ALJ criticized Dr. Spies' opinion for its reliance on Hodge's "subjective reports" as well as its support in the record. As legal error, Hodge challenges the ALJ's failure to assign an express weight to Dr. Spies' mental evaluation and the ALJ's implicit rejection of Dr. Spies' evaluation for the improper reason that it was based, at least in part, on Hodge's own accounts of her symptoms.

#### a. **Assignment of weight to a medical opinion**

The agency concedes the ALJ did not formally reject Dr. Spies' assessment or employ the term *weight* with an appropriate adjective such as "little" or "limited." [Doc. 22, p. 11]. True, the ALJ must consider all medical opinions and discuss the weight assigned; however, a reviewing court may not hold the ALJ to "technical perfection." *Keyes-Zachary*, 695 F.3d at 1167 (explaining "[a]gain, common sense, not technical perfection, is our guide"). The Tenth Circuit's commonsense mandate means that so long as the weight is implicit or the Court is otherwise able to follow the ALJ's reasoning, the ALJ's failure to invoke certain phraseology does not amount to reversible error. *See Hendron*, 767 F.3d at 957 (explaining that "where we can follow the adjudicator's reasoning in conducting our review . . . .merely technical omissions in the ALJ's reasoning do not dictate reversal") (citation omitted)); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (reversal not required where the ALJ's reasoning is implicit).

The ALJ's failure to specifically reject or assign some lesser weight to Dr. Spies' evaluation is not fatal here. It is obvious the ALJ either rejected Dr. Spies' limitations altogether

or gave them no significant weight. The Court can discern the ALJ's reasoning from his conclusion that Dr. Spies assessment is "not well supported in the record" and his later determination to afford "great weight" to a non-examining phycologist the agency hired. [AR 21-22; 23]. Of course, the Court's task is much simpler with a concrete expression from the ALJ that leaves no room for doubt or interpretation. But demanding this type of perfection ignores the very difficult job the ALJ performs in the administrative process and the necessary role the ALJ serves. Because the ALJ's rejection of Dr. Spies evaluation is implicit in the ALJ's decision, the Court rejects Hodge's contrary argument and will not reverse on this technicality.

### b. Legal sufficiency of the reason given

In examining Hodge on June 19, 2012, Dr. Spies elicited information from Hodge about her mental health, made observations, and combined Hodge's responses with the observations to arrive at diagnostic impressions under the DSM, including a GAF of 40 and assessment that Hodge's ability to maintain employment was markedly limited. [AR 534-35]. The ALJ rejected Dr. Spies' evaluation of Hodge, in part, because it was based on what the ALJ characterized as Hodge's "subjective reports." [AR 21-22]. Hodge contends it was entirely appropriate for Dr. Spies to rely on her own accounts and legal error to reject Dr. Spies' opinion on that basis.

In *Schwarz v. Barnhart*, 70 Fed. Appx. 512, 518 (10th Cir. 2003), the Tenth Circuit explained that "[t]he accepted clinical technique for diagnosing such a[] [mental] impairment is to assess the existence and severity of symptoms and signs identified by the American Psychiatric Association in the DSM-IV," which is "usually based on a patient's subjective reports and the psychologists own observations." *Id*. In other words, evaluations "do not produce laboratory-type results, instead requiring interpretation of the patient's responses." *Id.*

(further highlighting that "[t]here is no 'dipstick' test for disabling depression") (citing *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993)).

In this case, Dr. Spies followed the accepted technique and it was error for the ALJ to reject Dr. Spies' limitations because they had an element of subjective reporting. Dr. Spies completed the DSM using Hodge's responses and her personal observations, which included among others, that Hodge's "speech and thought process was tangential, her speech was monotone, and her affect was flat" and Hodge "presented as depressed and cried throughout the appointment"; her "thought content was negative"; immediate recall was good, but her delayed recall was poor." [AR 534-35]. Dr. Spies thus adhered to *Barnhart*'s standard. Rejecting Dr. Spies opinion as based on Hodge's reporting is inapposite to that analysis, and the Court remands the matter to the ALJ to follow the correct legal standard.

### 2. *Factual attacks to the RFC*

From what the Court can surmise, the ALJ rejected Dr. Spies' limitations as "not well supported in the record" for the same reasons the ALJ gave for the overall RFC determination. [AR 22-25]. Hodge asserts the four bases the ALJ relied on in dismissing her mental limitations, discounting her credibility, and concluding she could perform sedentary work are unsupported by substantial evidence: (1) Hodge had a normal mental status examination and no record of attempted suicide or impatient treatment; (2) Hodge missed therapy appointments; (3) Hodge is able to care for her special needs children; and (4) medication controls her symptoms.

Unlike the ALJ's reliance on Hodge's subjective reports as a basis for discounting Dr. Spies' assessment, a lack of support in the evidentiary record—to the extent it exists—is a legally sufficient reason for rejecting a consultative examiner's opinion, discounting a plaintiff's credibility, and deciding not to incorporate limitations into RFC. *See* SSR 96-6p, 1996 WL

374180. The question the Court must, therefore, answer is whether substantial evidence in the record bears out the ALJ's reasons for rejecting Dr. Spies' limitations specifically and the RFC determination more generally. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Although the Court may not reweigh the evidence, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### a. Mental status examinations

In crafting Hodge's RFC, the ALJ correctly observed that Hodge "had a normal appearance, good attention and concentration . . . normal thought content," "good insight and judgment, appropriate affect, and displayed eurythmic mood" at an appointment with Walsh Counseling Services and "appeared fully alert, oriented, had fair judgment, and fair insight [at] an appointment on November 26, 2013" with New Mexico Solutions. [AR 22; 23]. Although Hodge suffers from bipolar disorder, a mental illness defined by *extreme* behavioral fluctuations,[5] the ALJ took Hodge's countenance as proof positive that any limitations were "out of proportion to the objective evidence." [AR 23]. The ALJ further discounted low functional assessments because Hodge had "[n]ever undergone impatient treatment or attempted suicide." [AR 23]. Problematically, the ALJ's observations appear to have been made in a vacuum, without consideration of the other medical evidence that fairly detracted from the ALJ's determination.

Although Walsh attributed some normal features to Hodge, Hodge scored 40 on the GAF in the same sitting, indicating, in the ALJ's own words, "serious symptoms." [AR 23; 716]. If

---

[5]*See Jaax v. Colvin*, 2015 U.S. Dist. LEXIS 8435, *17 (W.D. Mo. Jan. 26, 2015) (citation omitted) (explaining that "[b]ipolar disorder—sometimes called manic-depressive disorder—is associated with mood swings that range from the lows of depression to the highs of mania")

the ALJ meant to say Walsh's contemporaneous mental status examination is inconsistent with the low GAF assigned, the ALJ could have a point, but he does not further explain his reasoning. *Cf. McFall v. Colvin*, 2016 U.S. Dist. LEXIS 56127, *37 (W.D.N.Y. Apr. 26, 2016) ("The ALJ also rejected certain GAF scores solely because she perceived them as being inconsistent with the results of contemporaneous mental status examinations . . . without explaining her premise that a low GAF score is necessarily incompatible with a normal mental status examination"). In other words, some level of stability is necessary to allow testing to occur in the first place, and outward normalcy may not be irreconcilable with a finding of significant mental illness, especially where bipolar disorder is concerned.

To be fair, suicide attempts and a record of hospitalization would support a low GAF and are often criteria used to determine whether an impairment is sufficiently severe to meet or equal a presumptively disabling agency listing. Contrary to the ALJ's implication, however, suicide and inpatient treatment are not necessary conditions to a low functional assessment or determination of disability. In fact, to indulge this logic could create perverse incentives or encourage self-harm. In any event, the longitudinal GAF scores are *consistent* notwithstanding the ALJ's observation of normal personality attributes, and no hospitalization or evidence of attempted suicide: 45 on August 24, 2012; 45 on December 16, 2012; 40 on June 19, 2012; and 40 on November 11, 2012. [AR 495; 502; 536; 716].

Likewise, the ALJ's focus on a single status exam from New Mexico Solutions ignores dozens of other counseling records spanning 2012-2013. [AR 489-502; 640-670]. Those documents, a majority of which are from New Mexico Solutions, almost universally show Hodge as having a depressed affect, and at times, presenting with a depressed mood, episodic tearfulness, blunted flat affect, anxious affect and mood, slowed speech, pressured speech,

euphoric mood, "loosening of associations" in her thought processes, phobias, fare insight, minimal insight. [AR 489-502; 640-670]. Of the providers that have examined Hodge, all have diagnosed her with severe mental impairments, including severe depression and bipolar disorder, scored her GAF between 40-45, and observed various combinations of the symptoms above that are consistent with the low GAF.

The ALJ's determination does not meet the substantiality test. Hodge's seemingly normal attributes were not considered in the context of the entire record, which the Court concludes is error. Although it is the province of the ALJ to resolve conflicts amongst the evidence, *see Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016), the ALJ was not permitted to choose portions of the record favorable to its RFC determination without so much as mentioning the unfavorable portions of those very same documents relied upon. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). The Court therefore remands the case for the agency to fairly and fully consider the medical evidence.

### b. Childcare and efficacy of medication

In the ALJ's view, Hodge "described daily activities that are not limited to extent one would expect given the complaints of disabling symptoms and limitation" as exemplified by her testimony at the hearing that "she cares for her two special needs children." [AR 23]. The ALJ also based the RFC on Hodge's putative testimony that Paxil controlled her symptoms. [AR 23]. The Court recognizes that caring for children with special needs may well be antithetical to a finding of disability. Certainly too, bipolar disorder and depression may be effectively treated

with medication. The ALJ's recollection of the evidence presented, however, does not square with Hodge's *actual* testimony during the proceedings.

Hodge testified that she struggles with her childcare obligations; "has had a lot of trouble with Child Protective Services"; and that her son had been removed from the home by "CPS." Moreover, Hodge explained she had help "through a program that provided" "respite" and her "grandmother always helps with [her] kids too." [AR 53; 54]. Hodge testified that Paxil, a drug she does not take, helped her depression, but this single statement ignores later testimony that she needed better medication to help control depression and allow her to get out of bed. [AR 44]. Counseling records also confirm that Hodge presented with depressed and anxious affect, pressured and slowed speech, and dissociative thinking while compliant with medication. [AR AR 489-502; 640-70]. As above, the ALJ's characterization of the testimony is unsupported by the record; on remand, the agency should fully consider the entirety of the evidence.

### c. Attendance record at appointments

Hodge "no called and no showed" to approximately six therapy sessions at either New Mexico Solutions or River Valley Behavior Health between 2012 and 2013. [AR 495; 502; 536; 716]. The ALJ identified four such instances, two of which are actually the same date, and drew the inference that Hodge's symptoms "may not have been as serious as has been alleged in connection with this application and appeal." [AR 23]. In point of law, the ALJ's reasoning is sound. *See*, *e.g.*, *Romero v. Astrue*, 242 Fed. Appx. 536, 543 (10th Cir. 2007) (considering missed appointments as one factor supporting the ALJ's adverse credibility finding); *Baca v. Berryhill*, 2017 U.S. Dist. LEXIS 49066, *16 (D.N.M. Mar. 31, 2017) (same).

The Court is not convinced that the modest amount of missed appointments supports disregarding Hodge's assessed mental limitations. In terms of the substantiality test, the Court

has examined the portions of the record that fairly detract from the ALJ's observation. Unaddressed by the ALJ are approximately eighteen therapy sessions that Hodge did make. Thus, the counseling records establish Hodge attended the majority of sessions. Moreover, Hodge testified that her depression forces her to "stay in the house" and prevents her from "mak[ing] it to appointments." [AR 44]. It is obvious the ALJ did not believe that Hodge's mental impairments were limiting no matter what source the limitations came from—agency consultant, psychiatrist, counselor, or Hodge. However, the ALJ was required to consider the whole record. On remand, the agency must examine the full picture before fashioning a residual functional capacity that discounts the limitations that the examining providers placed on her ability to work and that Hodge herself testified to.

### IV. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ erred in determining that Hodge retained the residual function capacity to permit sedentary work. **IT IS, THEREFORE, ORDERED** that Plaintiff's motion to reverse and remand is **GRANTED** [Doc. 16] and the matter is **REMANDED** to the agency for proceedings consistent with this decision.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent